UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11631-RGS

ROBERT E. MCALEER

v.

STARBUCKS CORPORATION

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

January 31, 2014

STEARNS, D.J.

Plaintiff Robert E. McAleer brought this action against his former employer, Starbucks Corporation, alleging interference with the exercise of his rights under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq.* (Count I), and retaliation (Count II). Presently before the court is Starbucks's motion for summary judgment. For the reasons to be explained, summary judgment will be granted on Count I and denied on Count II of the Complaint.

FACTUAL BACKGROUND

The material facts in the light most flattering to McAleer as the nonmoving party are as follows.[1] McAleer is a resident of Salem, Essex

---

[1] Some additional facts will be referenced in the body of the opinion as they become relevant to the legal claims at hand.

County, Massachusetts. Starbucks is a global retail coffee company based in Seattle, Washington. Starbucks owns and operates a retail store at 242 Elliott Street, Beverly, Massachusetts (Elliott Street Store). Starbucks hired McAleer on or about November 1, 2010, to manage the Elliott Street Store. McAleer did not, however, officially assume managerial duties at the store until February of 2011. As the store manager, McAleer was responsible for the overall operations, including cleanliness, customer service, and employee[2] development. When McAleer took the helm, the store was falling short of several of Starbucks's performance targets.[3]

In August of 2011, McAleer came under the supervision of a new district manager, Christina Lane. The Elliott Street Store was still underperforming. In October of 2011, when Lane gave McAleer his performance evaluation for the fiscal year ending September 2011, she noted that the Elliott Street Store was failing in six out of the eight essential performance metrics.

---

[2] Starbucks labels its employees as "partners."

[3] Starbucks measures the performance of its store managers in part by charting certain performance metrics against the store's targets for each month of the fiscal year, from October through September. The scorecard includes grades on partner turnover, new hire success rate (that is, the retention rate of new hires), customer satisfaction (including store cleanliness), sales, labor relations, and controllable contributions.

In late 2011, McAleer's wife was diagnosed with cancer and scheduled to undergo surgery in early 2012. In January of 2012, McAleer informed Lane that he would require time off to care for his wife following the surgery. McAleer took vacation days for that purpose from February 21, 2012, through February 26, 2012. He also applied for FMLA leave, which was formally approved by Starbucks to begin on April 9, 2012.

In February of 2012, Lane, while noting some improvements at the Elliott Street Store, identified a number of continuing problems. On March 13, 2012, McAleer sought a transfer to a Starbucks store in Seattle. On March 21, 2012, Lane told McAleer that he would be placed under a performance improvement plan (PIP). Because of the PIP, McAleer was ineligible for the requested transfer to Seattle.

On April 8, 2012, the day before McAleer began his FMLA leave, Lane emailed him a draft copy of the PIP. The PIP mandated progress reviews at 30, 60, and 90-day intervals. While McAleer was on FMLA leave, Lane substituted for him at the Elliott Street Store. On April 25, 2012, a week after McAleer returned to work, Lane gave him the final draft of the PIP.

At the first 30-day PIP review, Lane registered dissatisfaction with McAleer's performance. At the second progress review on July 2, 2012, Lane repeated her criticisms and noted the specific areas in which she

found McAleer's performance to be wanting.  On July 27, 2012, the Elliott Street Store again failed a quality assurance audit (QASA) for cleanliness, after having failed the same audit a number of times beginning in May of 2011.  Between July 2, 2012 and August 6, 2012, Lane recorded complaints from McAleer's Starbucks employees about his management skills.

On August 6, 2o12, following the 90-day review, Lane noted some improvements in McAleer's performance, but faulted him in other respects.  On August 16, 2012, Starbucks was served with this lawsuit.  On August 17, 2012, Starbucks notified McAleer that he was terminated.

DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side."  *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted).  "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact."  *Id.*  A material fact is one which has the "potential to affect the outcome of the

suit under the applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

The FMLA establishes two distinct sets of rights: "prescriptive" rights creating substantive entitlements, and "proscriptive" rights providing protection for their exercise. *Colburn v. Parker Hannifin,* 429 F.3d 325, 330 (1st Cir. 2005). The statute entitles an eligible employee to a total of twelve weeks of leave that may be taken intermittently for "a serious health condition." 29 U.S.C. § 2612(a)(1)(D). With limited exceptions, any employee who takes leave "shall be entitled, on return from such leave — (A) to be restored by the employer to the [previous] position . . . or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* §§ 2614(a)(1)(A) and (B). Furthermore, "[a]n employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act." 29 C.F.R. § 825.220(a)(1). To meet his or her burden on a claim of interference with this right, an employee need only show an

entitlement to the leave; no showing of the employer's intent is required. *Colburn,* 429 F.3d at 330-331.

McAleer faults Starbucks in the first instance for failing to recognize his January of 2012 request for time away from work to care for his wife as FMLA-qualifying.[4]  He nonetheless (and appropriately) concedes that he is "not seeking damages under a theory that he was denied rights under the FMLA during his first leave," but rather "is alleging that Starbucks failed its obligation to inquire whether his first leave was covered by the FMLA." Dkt. #28 at 3.  However, nominal and consequential damages, including emotional distress damages, are not available under the FMLA.  *See Colburn*, 429 F.3d at 334 & n.5.

Although the lack of a remedy under the interference claim is fatal to Count I of the Complaint, the underlying circumstances might nonetheless

---

[4] FMLA regulations do not require that an employee request prospective FMLA leave in all instances.  Rather, an employee "should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Nor is the employee required to specifically invoke the FMLA when requesting leave.  "When an employee seeks leave for the first time for a FMLA – qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA."  *Id.* § 825.302(c).  "The employee, [however], must specifically reference the qualifying reason for leave or the need for FMLA leave."  *Id.*  "In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." *Id.*

be relevant to a jury in considering McAleer's Count II retaliation claim with which it might be seen to merge.  As the First Circuit has observed, "[t]he term 'interference' may, depending on the facts, cover both retaliation claims . . . and non-retaliation claims," again depending "on the nature of the facts and the theory of the case."  *Colburn,* 429 F.3d at 331, citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 159-160 & n.4.

Under the familiar burden-shifting framework applicable to McAleer's retaliation claim, he has the initial burden of coming forward with a prima facie case establishing that:  (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action.  *Hodgens,* 144 F.3d at 161.  If he carries his weight, the burden shifts to Starbucks to articulate a "legitimate reason" for his termination.  *Id.* at 167.  This burden is simply one of production – when it is met the burden shifts back to McAleer to show that the reason proffered by Starbucks was a pretext for retaliation. *See id.* at 160-161.

There is no real dispute as to the first two elements of McAleer's prima facie case or that Starbucks has satisfied its burden of production by articulating a reason – namely, McAleer's poor performance under the PIP

– that if believed would justify of his claim dismissal.[5] Rather, the dispute is joined over the existence of a causal connection between McAleer's request for FMLA leave and his lawsuit and Starbucks's decision to fire him.

The facts marshaled by McAleer in this regard are: (1) that Lane informed McAleer of her intent to impose the PIP on March 21, 2012, less than a month after McAleer told her that he might need additional time off;[6] (2) Lane emailed McAleer a draft copy of the PIP the night before he began his FMLA leave; (3) Lane imposed the PIP the week after McAleer returned to work (and after Lane had to cover at the store in his absence); and (4) McAleer was terminated on August 16, 2012, literally the day after Starbucks was served with his lawsuit. While "close temporal proximity" between events is not necessarily dispositive, it "may give rise to an inference of causal connection." *Id.* at 168.

Starbucks, for its part, assembles an impressive amount of evidence focused on McAleer's performance deficiencies, namely his persistent fell

---

[5] Starbucks contends that the PIP did not constitute "adverse action" because the PIP "did not impose any higher standards or additional duties upon McAleer; rather, it organized and emphasized the expectations to which he was already held." Dkt. #25 at 13-14. However, Starbucks concedes that the PIP in question required McAleer to carry out tasks such as documenting every single work-related conversation that he had with Starbucks partners in his store that was not required of other store managers who were not on a PIP.

[6] McAleer again brought up with Lane the subject of taking additional time off on February 28, 2012.

below his performance targets and the failure of the Elliott Street Store to pass multiple quality assurance audits.

At the end of the burden-shifting exercise what carries the case to a jury is McAleer's evidence that two other similarly situated managers in Lane's district who did not take the FMLA leave and who compiled the same dismal metrics as he did were not placed on a PIP. Moreover, there is believable evidence that during the relevant time period nine or more of the thirteen stores in Lane's district were performing as poorly as McAleer's, while none of the other managers were given PIPs (much less a termination notice).[7] It is open to a jury to find that Lane was irritated by McAleer's leave requests, resented having to fill in for him during his absences, and imposed a PIP with conditions that were designed to ensure McAleer's failure, in retaliation for his exercise of his FMLA rights. A jury might also conclude that McAleer was a miserable manager and, that given his underwhelming performance, Starbucks was well justified in getting rid of him. But as the First Circuit has emphasized, "the question is not whether a

---

[7] In FY 2011, nine of Lane's thirteen stores were underperforming in "overall customer satisfaction," and "taste of beverage;" three stores were underperforming in "new hire success rate." In 2012, ten out of Lane's thirteen stores were underperforming in "overall customer satisfaction;" five stores were underperforming in "taste of beverage;" and four stores were underperforming in "new hire success rate." Dkt. #30 at 12-13. Starbucks' response that McAleer was "categorically deficient" in multiple performance areas, while the other managers were only episodically so, is a matter for the jury. *See* Dkt. #25 at 14.

reasonable jury could find that [an employer] would have fired [an employee] even in the absence of retaliatory intent. Rather, the question pertinent to our review of summary judgment is whether no reasonable jury could find otherwise." *Travers v. Flight Servs. and Sys., Inc.*, 737 F.3d 144, 148 (1st Cir. 2013).

### ORDER

For the foregoing reasons, Starbucks's motion for summary judgment on Count I is <u>ALLOWED</u>. As to Count II, the motion is <u>DENIED</u>. The Clerk will set the case for trial by jury on the next available trial date.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE